## CURTIS v. DINNEEN.

1. MASTER AND SERVANT—HUSBAND AND WIFE AS—WIFE'S LIABILITY FOR KEEPING DANGEROUS SERVANT, SUCH SERVANT BEING HUSBAND.

   Where a wife is sued for damages for an assault committed by the husband, he being employed by her as a servant, and being of a brutal and ferocious disposition, the ground of recovery being her negligence in keeping in her employ a servant of such character; the premises, a hotel, being the homestead of both; such negligence being founded on the right and duty of the employer to order the servant to leave the master's premises and employment; a recovery cannot be had against the wife.

2. LIABILITY FOR SERVANT'S TORT—ACT NOT COMMITTED IN COURSE OF EMPLOYMENT.

   In order to render a master liable for the tort of a servant, the act of the servant must be done in the execution of the authority given by the master, in the pursuit of the master's business within the scope of

the servant's employment.    And even where the relation of master and servant exists, a recovery cannot be had without proof of these further facts.

3.  MASTER AND SERVANT—ALLEGATION IN COMPLAINT—OTHER RELATION CANNOT BE PROVED.

Where the complaint alleges the relation of master and servant in such case, the relation of principal and agent could not be shown.

Filed October 4, 1886.

Appeal from the district court of Beadle county.

The pleadings are set in the opinion, and the facts so far as material to the points decided.

*Burt, Ayers & Crofoot, John Lind of counsel*, for plaintiff and appellant.

Thompson, in his work on Negligence, Vol. 2, ᵟ92, says that "this right to control appears to be the conclusive test by which to determine whether the relation exists.  The right to control another implies the power to discharge him from the service or employment for disobedience; and, accordingly, the power to discharge is said to be the test by which to determine whether the relation of master and servant exists.  Pawlet v Rutland, etc., R. Co., 28 Vermont, 297; McGuire v. Grant, 25 N. J., L. 357; Blake v. Ferris, 5 N. Y. 48; Hilliard v. Richardson, 5 Gray, (Mass.) 349; Sherman & Red. Neg. Sec. 73.

The authorities are unanimous that to hold the master for the servant's tort, it must appear, that at the time of its commission the servant was not only in the master's employ, but that he was then actually acting for, and doing his master's business and within the actual or apparent scope of his authority.  Smith on Master and Servant, 151; Mosier v. St. P., Minneapolis and M. Ry. Co. 31 Minn. 351, and authorities there cited; 19 Iowa, 26; Sherman & Redfield on Negligence, §§ 62, 63; Cooley on Torts, 533, *et seq.*

The master is not liable for a wanton injury by a servant, even though committed while engaged in serving the master. Wright v. Wilcox, 19 Wend. 343; Douglas v. Stephens, 10 Mo. 362, 5 Rich. L. 17; 39 N. Y. 381; 6 Cont. L. J. 294; 41 Ia. 358; 18 Ill. 259; 30 Ia. 201; 12 Ia. 348; 3 Minn. 351; 12 Allen, 56.

The liabilities of an inn-keeper in the Territory of Dakota are clearly defined. Civil Code, Sections 1062 and 1063. And it is expressly provided by the same Code, Section 6, that there is no common law where the law is declared by the Code. (See also Code of Civil Procedure, Section 3.); 12 N. W. Rep. 890; 13 N. W. Rep. 386 and 508; Wait's Annotated Code, 317, Section 171; 8 Cal. 619; 28 Cal. 65; 35 Cal. 188; 41 Cal. 94; 7 Cal. 135; 49 Cal. 347; 3 Cal. 191; 1 Estee, 141; 97 Ill. 66; 40 Ill. 280; Woods' Master and Servant, Section 72.

*Melville & Kelley*, for respondent.

Section 79 of the Civil Code, provides that "Either husband and wife may enter into any engagement or transaction with the other or with any other person," etc.

And, while in the conduct of a separate business, the wife undoubtedly has the right to employ in the management of that business whomsoever she chooses. She has a right to employ her husband as her agent, "and while acting as such in relation to her separate property her liability for his acts is precisely the same as it would be for the liability of any other agent."

"The wife is liable in the same manner and to the same extent for frauds or torts committed in the management of her property as she is upon contracts relating to it." Baum *et al.* v. Mullen, 47 N. Y. 577; Bodine *et al.* v. Kelleen, 53 N. Y. 96; Schuler v. S. & L. Soc. 1 Pac. 479.

Could the appellant have discharged her husband? is asked by her counsel. Of course she could; and she could and did have the absolute right to employ him in the capacity of a servant.

We claim that the appellant is certainly liable to protect her guests from wrongful acts, but beyond this she is liable for all injury received by her guests or customers from her servants inflicted while in the performance of their duty, or while in the course of their employment. Wade v. Thayer, 40 Cal, 578; Schouler on Dom. Rel. 688; Cooley on Torts, 538; Rounds v. Delaware R. R. Co., 64 N. Y. 129; Cohen v. Dry Dock *et al.* 69 N. Y., 170; D. S. P. & P. Ry. Co. v. Conway, 5. Pac. Rep.

142; 47 N. Y. 274; 69 N. Y. 170; 24 N. Y. 181; 26 Id. 49; 51 Id. 295; 46 Id. 23; 49 Id. 255; 44 Ia. 255; 36 Wis. 657; 57 Me. 202; 8 Am. Rep. 78; 106 Mass. 180; 76 Ind. 142; 50 Mo. 104; 73 N. Y. 534.

The defendant is liable even if the act which produced the injury was the willful, reckless and malicious act of the servant of the defendant beyond any authority conferred upon him by the defendant. Jackson v. Second Ave. R. Co., 46 N. Y. 275; Rounds v. D. L. & W. R. Co., 64 N. Y. 129; Ochsenkin v. Shapley, *et al.*, 85 N. Y. 219; Hoffman v. N. Y. C. H. R., 87 N. Y. 25, 89 N. Y. 242; Mott v. Consumer's Ice Co., 73 N. Y, 543; Rounds v. D. L. W. R. R. Co., 64 N. Y. 129; Cohen v. D. D. E. B. & B. R. Co., 69 N. Y. 170; Hoffman v. H. R. R. Co., 89 N. Y. 27; Bryant v. Rich *et al.* 106 Mass. 180.

FRANCIS, J. This case comes up on appeal from the judgment of the district court on a verdict of the jury in favor of the plaintiff in an action for damages for personal injuries alleged to have been sustained by the plaintiff at the hands of M. J. Dinneen, the alleged servant of the defendant, the keeper of a hotel. The complaint is as follows:

"Plaintiff, complaining of the above named defendant, alleges:

"*First.* That in all the times hereinafter mentioned the defendant was the keeper of a common inn in the city of Huron, Dakota, known as the 'Dakota House.'

"*Second.* That on or about the 15th day of January, 1884, this plaintiff was received by the defendant as a traveler and guest at said inn and hotel.

"*Third.* That the defendant and her servants so negligently, carelessly, and unlawfully conducted themselves, in regard to running said hotel, that while plaintiff so remained in said hotel or inn, she was set upon by the servant of the defendant, with defendant's knowledge and consent, and by them pounded and beaten in the face, and thereby made sick, sore and lame, and for a long time thereafter was sick, sore and lame, and one eye was bruised and pounded so as to be permanently injured, as plaintiff is informed and believes.

"*Fourth.* That on the twelfth day of February, 1884, while the plaintiff was there and then her guest, the defendant undertook, for a compensation paid her by the plaintiff, to keep safely and from harm, and in a proper manner, this plaintiff while she should remain in the defendant's inn or hotel; that, while this plaintiff was stopping at the inn or hotel of the defendant, this plaintiff was, by the wrongful and spiteful acts of the defendant's servants, greatly injured by being pitched upon and pounded by the servants of the defendant. whereby plaintiff's eye was hurt, and, as plaintiff believes, greatly and permanently injured.

*Fifth.* For a fifth and further complaint, plaintiff, repeating the first count of the complaint, further alleges that on the twelfth day of February, 1884, and for a long time before that date, the defendant had in her employ, in and about said hotel, a servant by the name of M. J. Dinneen, who was of a rough, brutal, passionate, and ferocious disposition, to whom defendant trusted largely the care and conduct of her hotel or inn; that for a long time before the twelfth day of February, 1884, the defendant well knew that the said servant, M. J. Dinneen, was of rough, brutal, passionate, and ferocious disposition, and accustomed to strike, and in the habit of attacking and pounding and striking mankind, and in the habit of striking and pounding the guests of said inn or hotel, and had full knowledge that said M. J. Dinneen had on many occasions attacked and beat mankind, and the guests of said hotel or inn; that the defendant, while she kept said servant, M. J. Dinneen, in and about her employ, and intrusted him with the care of her hotel and inn, and with the care of her guests, wrongfully and negligently suffered said rough, brutal, passionate, and ferocious servant to go at large in and about her hotel or inn, intrusted by the defendant with the care of said hotel and of the guests, without being properly guarded or confined, well knowing his vicious, ferocious, and brutal propensities to strike and beat mankind, and the guests of her house, without provocation.

"*Sixth.* That on the twelfth day of February, 1884, the

said brutal, rough, passionate and ferocious servant, while in the keeping of the defendant, and while in her employ, intrusted with the running of said hotel or inn, and with the care and conduct of the same for the defendant, attacked and struck and pounded this plaintiff in and about the eye, whereby the plaintiff became sick, sore, and lame, and so remained for a long time, and was thereby accasioned great pain, and her eye was blinded, and greatly, and, as plaintiff fears, permanently, injured; and plaintiff was prevented from going on with her business as a seamstress, and was obliged to, and actually did, expend large amounts of money in boarding herself, and for medical aid in endeavoring to heal herself of said wound, to her damage ten thousand dollars.

"*Seventh*. For a seventh and further complaint, the plaintiff, repeating the first allegation, alleges that upon the twelfth day of February, 1884, while the plaintiff was a guest at the defendant's inn, temporarily stopping until she had completed some business in Huron, Dakota, one M. J. Dinneen was a servant of the defendant, and as such servant, was intrusted with the care of said inn or hotel, and the defendant's guests therein, by the defendant; that on the day last mentioned, when said plaintiff was the guest of the defendant at the said inn, for a compensation duly paid, the said M. J. Dinneen, servant of the defendant, wrongfully, wilfully, and without cause, while in the course of his employment, struck, hit, and pounded this plaintiff, striking her in the eye and face, whereby plaintiff's face became greatly injured, and whereby this plaintiff became lame and sick and sore, and so remained for a long time, aud was thereby occasioned great pain and suffering of mind and body, and the plaintiff's eye was greatly injured, and she was obliged to and actually did expend large amounts of money in endeavoring to heal herself of said injury, to her great damage, ten thousand dollars.

"Wherefore, by reason of the premises, the plaintiff demands judgment of this defendant for the sum of ten thousand dollars, besides costs of this action."

And to this complaint the defendant answers as follows:

"For her answer to the complaint in this action the defendant alleges the following facts, constituting her defense:

*First.* The defendant admits the matters and things set out in the first subdivision of the complaint.

*Second.* The defendant denies that on or about the fifteenth day of January. 1884, or at any other time, this plaintiff was received in or harbored or remained in this defendant's inn as a guest or as a traveler, but alleges the facts to be that on or about the fifteenth day of January, A. D. 1884, the plaintiff entered the said defendant's said house to dwell as a boarder and a lodger at an agreed compensation of five dollars per week, and not otherwise.

"*Third.* The defendant further alleges that the M. J. Dinneen mentioned in the complaint is her, the defendant's, husband, and that he and the defendant are living together in the relation of husband and wife, and not otherwise or in any other relation.

"*Fourth.* The defendant denies each and every part of said complaint, and each and every allegation and part of allegation therein contained, except as hereinbefore admitted.

"*Fifth.* The defendant further denies that the plaintiff has expended any money, or has been damaged in the sum of ten thousand dollars, or in any sum or amounts whatsoever, by reason of any act, matter, or thing done or suffered to be done by this defendant, or by her servants, or by reason of any of the matters charged in the complaint against this defendant."

On the trial of the case the jury found a verdict for the plaintiff against the defendant, in the sum of $1,500, and also made a special finding that M. J. Dinneen was the servant of the defendant at the time of the transaction complained of. On this verdict the court entered judgment for the plaintiff, and the defendant appealed. The errors assigned are 46 in number, but fortunately need not be considered in detail. The plaintiff (respondent) seeks to make the defendant, (appellant,) as an innkeeper, respond in damages for the tort of her alleged servant in assaulting and striking the plaintiff.

And, first, it is claimed that the said defendant is liable

because of her negligence in having in her employ "a rough, brutal, passionate and ferocious servant," "to whom she intrusted largely the care and conduct of her hotel or inn," well knowing his disposition, and "negligently suffered said rough, brutal, passionate, and ferocious servant to go at large in and about her hotel or inn, intrusted by the defendant with the care of said hotel, and of the guests, without being properly guarded or confined, well knowing his vicious, ferocious, and brutal propensities to strike and beat mankind, and the guests of her house, without provocation;" the complaint in this regard being very much like one for keeping and allowing to run at large a vicious or ferocious dog or other animal. The complaint charges the said defendant with negligence in having and keeping in her employ a brutal, passionate, and ferocious servant, and, on the ground of this negligence, it is claimed that the defendant is liable for the tort of such servant. This allegation and charge in the complaint, and claim of liability, necessarily implies the possession by the defendant of the right and power to employ the servant complained of, and also to control and confine him, as well as the right and power to discharge him; the real insistment being that she was guilty of negligence in keeping said servant in her employ knowing his disposition and propensity, and that, having kept him, and not discharged him, and having suffered him to run loose about the premises, she is bound to respond in damages for his assault upon the plaintiff.

But the defendant cannot be made liable on this ground, which rests upon the relation of master and servant, and is subject to the legal principles governing the said relation, when we regard the admitted fact that the relation of husband and wife existed between her and the person for whose tort as her servant it is claimed she is responsible? It will not be contended that the existence of the relation of master and servant is all that is required to fix upon the master liability for the wrongful act of his servant. In order to make one person liable for the act of another as his servant, the relation of master and servant must exist between them, and the

master must have control over the servant, and the right and power to hire, direct, and discharge him, and certainly, when the liability is claimed for negligence in keeping said servant in his employ, the right and power to order or compel the servant to leave his employment and premises. Has a wife, under our Code, such control, direction, right, or power over her husband? I think not. And this view is strengthened, in the case at bar, since, so far as the evidence shows, the entire premises were the homestead or dwelling of the husband and wife, (the defendant and her husband, the alleged servant;) it not appearing that any particular rooms or portions of the inn, hotel, or boarding house of the defendant were used as the dwelling or home of the defendant and her husband in contradistinction to the whole of said inn, hotel, or boarding house.

In this connection, that portion of Section 78, Chap. 3, Civil Code, is applicable, which provides that "neither husband or wife has any interest in the property of the other, but neither can be excluded from the other's dwelling." There is nothing in the relation of husband and wife that would make the defendant in this action responsible for the alleged act of her husband, or liable to respond in damages therefor; but, on the other hand, there is much in such relation opposed and repugnant to such responsibility or liability.

The attorneys for the respondent, (plaintiff,) referring to Section 79, Chap. 3, of our Code of Civil Procedure, quote only a part of it, as follows, viz.: "Either husband or wife may enter into any engagement or transaction with the other, or with any other person,"etc.; and claims that under it "the husband and wife are co-equals, and each is allowed to contract with the other." The entire section is as follows: "Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might, if unmarried, subject, in transactions between themselves, to the general rules, which control the actions of persons occupying confidential relations with each other, as defined by the title on trusts." It is evident that this section re-

lates only to engagements or transactions respecting property. And the next section, No. 80, of the same Code, provides that "a husband and wife cannot, by any contract with each other, alter their legal relations, except as to property, and except that they may agree, in writing, to an immediate separation, and may make provision for the support of either of them, and of their children, during such separation." Subdivision 1 of Section 83 of the Civil Code, which provides that "neither husband or wife, as such, is answerable for the acts of the other," is pertinent.

The liability of the defendant, then, must arise, if at all, from the relation of master and servant, or employer and employe, under the well-established legal principles governing such relation with respect to the liability of the master. Section 1157, Civil Code, defines the terms "master and servant," and says: "A servant is one who is employed to render personal service to his employer otherwise than in the pursuit of an independent calling, and who, in such service, remains entirely under the control and direction of the latter, who is called his master." It is doubtless good legal doctrine that a master is liable to answer in a civil action for the tortions or wrongful act of his servant if done in the course of his employment in his master's service, even though the master did not know of or authorize such act, or may have disapproved of or forbidden it. The act must be done in the execution of the authority given by the master, and in the pursuit of the master's business, and must be within the scope of the servant's employment, or, unless it be ratified by the master, he (the master) will not be liable therefor. Outside of the scope of his employment the servant is a stranger to the master, and the master to the servant, so far as the liability of the one for the tort of the other is concerned. It is the relation of master and servant, and servant and master, that creates the liability, or from which it arises; and, within the limits of that relation, the liability, by reason of the very relation itself, has its birth, and outside of those limits it can neither arise nor exist. The application of

this principle is alike just to the master, to the servant, and to third persons.

It must be admitted that not only in the cases cited by counsel for the respondent, but in all well considered cases determining the liability of a master for the tort of his servant, including also the cases having reference to the liability of hotel propritors or innkeepers for the acts or torts of their servants or employes, the liability has been based upon the actual or implied existence of the relation of master and servant, employer and employe, and the nature and extent of such relation, and of the possession by the master or employer of the control and direction of the servant or employe, including the right and power not only to hire, but also to discharge, said servant or employe. And the extent of the liability of the master or employer is generally determined by the nature and limit of their control over the servant or employe, and the calling or business of the master in the prosecution of which the servant is employed, and in the course of which he acts for his master, and out of the course of which, unless by order of his master, he acts for himself.

However interesting, then, it would be to discuss the question whether or not the relation of master and servant can actually or in law exist between husband and wife, or wife and husband, or whether or not the two relations of husband and wife and master and servant can, at the same time, exist between the same persons, and, if they can exist, the extent, nature, effect, and qualifications of their existence, such discussion is unnecessary in this case; since, even admitting that the relation of master and servant existed between the said defendant and her said husband, and that the husband was the servant and his wife the master, the remaining essential element or requisite which must exist before the liability of the defendant could arise would be wanting, in that it does not appear, from a careful and discriminating inspection of the testimony and the surroundings of the case, that the husband, M. J. Dinneen, when he committed the assault and battery upon the plaintiff, was doing his master's business, or executing his master's or-

der, or acting within the scope of his duty or authority as the servant of such master; but, on the contrary, it is plainly manifest that, granting that, at the time he committed the act complained of, he was in the employ, as her servant, of his wife as his master, the assault and battery committed by him was neither his wife's business, nor done by her order or consent, nor ratified by her after its occurrence, nor was it within the·actual or apparent scope of his duty or authority as her servant. The injury inflicted by the said M. J. Dinneen upon the eye of the plaintiff was a part and the result of a personal altercation or quarrel between said M. J. Dinneen and the plaintiff, whom he assaulted; and to hold his wife responsible in damages for his tort, as his master, ·under the circumstances, would not be in accord with any principle of law or equity, but a violation of well-settled principles of both.

The claim by counsel for respondent that if said M. J. Dinneen was not acting as the servant of his wife, the defendant, he was then acting as her agent, and she is liable for his said act as her agent, is not tenable, even if we admit that he was her agent. It is hardly necessary to say that under none of the many principles governing and regulating the relation of principal and agent could the defendant, under the evidence in this case, be held liable for the said act of her husband, as her agent. There is great similarity between the relations of master and servant, employer and employe, and principal and agent, and neither the master, the employer, nor the principal is liable for the act of the servant, the employe, or the agent, unless such act comes within the scope of the authority or employment of said servant, employe, or agent; or of the order of said master, employer, or principal, or is assented to by said master, employer or principal, or is performed in the transaction, by said servant, employe, or agent, of the business of the said master, employer, or principal.

There is another and equally forceful reason why the plaintiff cannot claim damages from the defendant in this case as a principal liable for the act of her agent. The proof and the relief sought must conform to the pleadings, and the complaint

throughout alleges that the said M. J. Dinneen was the servant of the defendant, in her employ, and, as such servant, largely intrusted with the care of said hotel, etc., and the relief sought is entirely upon the claim and allegation that, as master, the said defendant was and is liable for neglect in keeping in her employ, and suffering to go unguarded, M. J. Dinneen, as her servant, and also liable as the master for the said tort of her said servant; and much of the evidence, in behalf of plaintiff, is directed to that end; and the specific finding submitted to the jury was: "Do you find that M. J. Dinneen was the servant of the defendant at the time of the transaction complained of?" The question of principal and agent, and liability under that relation, is not in the case made by the pleadings. The jury could not render a verdict against the defendant merely on their special finding that M. J. Dinneen was the servant of the defendant at the time he assaulted the plaintiff.

A further inquiry remained for solution and answer,—an inquiry which has proved to be decisive in this court,—viz.: Was M. J. Dinneen, as the servant of the defendant, acting in the course of his employment, or within the scope of his duty or authorty as such servant, when he assaulted the plaintiff, or was his act ratified by the defendant? No such inquiry was presented to the jury for their special finding thereon, and the record shows that in the trial of the action the issue embodied in said inquiry was not placed before the jury for their consideration with any clearness or definiteness, if at all.

The judgment of the district court is reversed. All the justices concurring.

### NOTE.

1. As to the civil liability of the husband for the wife's torts; see Doherty v. Madgett, (Vt.) 2 Atl. Rep. 115 and note. As to the criminal liability, Id; Mills v. State, (Neb.) 26 N. W. Rep. 354.

The common law liability of the husband for the torts of the wife still exists in Vermont, Lombard v. Batchelder, 5 Atl. Rep. 511; Doherty v. Madgett, 2 Atl. Rep. 115: but not in Michigan, Scott v. Chambers, 29 N. W. Rep. 94; Weber v. Weber, 11 N. W. Rep. 389; Enright v. Hartsig, 9 N. W. Rep. 496.

2. A master is responsible for the wrongful act of his servant within

the general scope of his authority, although he did not authorize the particular act. Heenrich v. Pullman Palace Car Co., 20 Fed. Rep. 100; Denver, S. P. & P. R. Co. v. Conway, (Colo.) 5 Pac. Rep. 142; or, if it was against his express orders. Pittsburgh, C. & St. L. Ry. Co. v. Kirk, (Ind.) 1 N. E. Rep. 849, and note; or in disregard of them, Cleveland v. Newsome, (Mich.) 7 N. W. Rep. 222. He is liable for the trespass of the servant. Walker v. Johnson, (Minn.) 9 N. W. Rep. 632; State v. Smith, (Me.) 4 Atl. Rep. 412; but not for his wilfull trespass. Wood v. Detroit City R. Co. (Mich.) 18 N. W. Rep. 124; nor for his wanton and malicious acts, Philadelphia, W. & B. R. Co. v. Brannon, (Pa.) 2 Atl. Rep. 429.

As to the criminal liability of the master for the illegal acts of the servant, see Com. v. Bryant, (Mass.) 8 N. E. Rep. 339, and note; Com. v. Stevenson, Id. 341.

As to what acts of a servant are within the scope of his authority so as to render his master liable for injuries resulting therefrom, see Com. v. Bryant, (Mass.) 8 N. E. Rep. 341, note; Pike v. Brittan, (Cal.) 11 Pac. Rep. 890, and note. What are not, see Olive v. Whitney Marble Co., (N. Y.) 8 N. E. Rep. 552, and note.